CANISIUS COLLEGE,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 1429, Docket 86–6065.

United States Court of Appeals,
Second Circuit.

Argued June 10, 1986.

Decided Aug. 20, 1986.

David A. Kapelman, P.C., New York City, for plaintiff-appellant.

Michael J. Roach, U.S. Dept. of Justice, Tax Div., Washington, D.C., (Michael L. Paup and Jonathan S. Cohen, Washington, D.C., of counsel), for defendant-appellee.

Before WINTER and PRATT, Circuit Judges, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

Appellant Canisius College (Canisius) seeks a refund of employer and employee Federal Insurance Contributions Act

---

\* The Honorable Herbert N. Maletz, of the United States Court of International Trade, sitting by designation.

(FICA) taxes paid by it and its employees for the 1980 tax year on amounts Canisius had contributed to employee retirement annuity contracts under a salary reduction plan. The United States District Court for the Western District of New York, John T. Elfvin, *Judge*, granted summary judgment for the government, holding that Canisius was not entitled to a refund. We affirm.

## I. *Introduction*

The facts are not in dispute. Canisius is a nonprofit educational institution exempt from federal income tax under sections 501(a) and 501(c)(3) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 501(a), 501(c)(3). As an organization described in section 501(c)(3), Canisius was qualified to establish an annuity plan for its employees under section 403(b) of the Code.[1] Canisius' type of section 403(b) plan is known as a "salary reduction" plan. Under that plan, employees desiring to purchase retirement annuity contracts entered into "salary reduction agreements" in which they agreed to accept salary reduction amounting to a specified percentage of their compensation, and Canisius, in exchange, agreed to apply that amount toward the purchase of their retirement annuities.[2]

Under Treasury Department regulations, the amounts contributed by Canisius to retirement annuities in accordance with this salary reduction plan were considered contributions made by the employer for section 403(b) purposes and so were not taxable as gross income to employees.[3] Those amounts were therefore not includable in employee "wages" for *income-tax withholding* purposes. Rev.Rul. 65–209, 1965–2 C.B. 414. However, in conformity with a 1965 revenue ruling, Rev.Rul. 65–208, 1965–2 C.B. 383, Canisius in 1980 included in "wages" for *FICA* tax purposes the amounts it had contributed under its salary reduction plan. On behalf of itself and certain of its employees, Canisius filed this suit seeking a refund of the FICA taxes paid.

## II. *Background*

We note at the outset that "wages" are the basis for determining employer obligations both for FICA and income-tax withholding purposes. 26 U.S.C. §§ 3101(a), 3111, 3402(a). The statutory definitions of "wages" for FICA and for income-tax withholding purposes are substantially identical in that each provides generally that wages constitute "all remuneration."[4] However, each definition contains various exclusions. As of 1980, the Code excluded from FICA wages:

1. Section 403(b), 26 United States Code, provides in part:

 If ... an annuity contract is purchased ... for an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a),.... and ... the employee's rights under the contract are nonforfeitable, except for failure to pay future premiums, then amounts contributed by such employer for such annuity contract on or after such rights become nonforfeitable shall be excluded from the gross income of the employee for the taxable year to the extent that the aggregate of such amounts does not exceed the exclusion allowance for such taxable year.

2. Another type of plan permissible under section 403(b) is a "salary supplement" plan under which an employer agrees that it will not only pay employees a certain salary, but that it will also contribute an additional amount to employee annuity contracts.

3. Employer contributions, under salary reduction plans or otherwise, are excluded from gross income only to the extent of an "exclusion allowance," which is generally twenty percent of an employee's includable income adjusted for certain other factors. 26 U.S.C. § 403(b); Treas.Reg. § 1.403(b)–1(b)(3), T.D. 6783, 29 Fed. Reg. 18,360 (1964).

4. More specifically, 26 U.S.C. § 3121(a), in the tax year in issue, provided that wages for FICA purposes are "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash." 26 U.S.C. § 3401(a) provided that wages for purposes of income-tax withholding are "all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash."

 "Wages" are also the basis for determining employer obligations for Federal Unemployment Tax Act (FUTA) purposes. The general definition of FUTA wages is identical to the one for FICA wages. *See* 26 U.S.C. § 3306(b).

the amount of any payment (including *any amount paid by an employer for* insurance or *annuities,* or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally ... *on account of—*

(A) *retirement....*

26 U.S.C. § 3121(a)(2) (emphasis added).

In 1965, the Internal Revenue Service ruled that the amounts paid by an employer for annuity contracts under a section 403(b) salary reduction plan—as opposed to a salary supplement plan—were includable in FICA wages. Rev.Rul. 65–208, 1965–2 C.B. 383 ("65–208"). The ruling specified that although such amounts were considered to be "contributed by the employer" and were therefore exempt from income tax under section 403(b), they were *not* to be considered as amounts " 'paid by an employer' for an annuity contract" and hence *were* subject to FICA tax. In the view of the Service, since the purposes of the section 403(b) income exclusion and of the FICA wage exclusion were "substantially different," the similar language in those statutes did not have to be similarly interpreted.

In 1981, in *Rowan Companies, Inc. v. United States,* 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), the Supreme Court concluded that the language and legislative history of the relevant Acts indicated that Congress intended that the FICA and FUTA definitions of wages be interpreted in the same manner as the income-tax withholding definition of wages. *Id.* at 263, 101 S.Ct. at 2297. Consequently, the Court found invalid a Treasury regulation that required inclusion of the value of certain tax-exempt meals and lodging in FICA and FUTA wages although the same value was not included in wages for income-tax withholding purposes.

The premise of *Rowan*—that the Treasury Department must similarly interpret the similar definitions of wages—cast doubt on the validity of 65–208, because that ruling required inclusion of amounts paid by employers for annuity contracts under salary reduction plans in FICA wages even though such amounts were not included in wages for income-tax withholding purposes.

In 1983, Congress partially codified the *Rowan* decision by amending the Social Security Act to provide that the value of the meals and lodging at issue in *Rowan* were not includable in FICA and FUTA wages. 26 U.S.C. § 3121(a)(19) (Supp. I 1983); *id.* § 3306(b)(14). However, Congress acted to preclude the possible impact of *Rowan* on 65–208 by amending the definitions of FICA and FUTA wages. *See* S.Rep. No. 23, 98th Cong., 1st Sess. 41, *reprinted in* 1983 U.S.Code Cong. & Ad. News 143, 182 (amendments are intended to codify 65–208). Among other things, these amendments—which became effective December 31, 1983 [5]—(1) deleted the statutory exclusion from FICA wages for amounts paid by employers for retirement plans, Social Security Amendments of 1983, Pub.L. No. 98–21, § 324(a)(3)(A), 97 Stat. 65, 123 ("1983 Act"), and (2) added a new subsection that excluded from FICA wages any employer payment

> under or to an annuity contract described in section 403(b), *other* than a payment for the purchase of such contract which is made by reason of a salary reduction agreement....

26 U.S.C. § 3121(a)(5)(D) (Supp. II 1984) (formerly codified at 26 U.S.C. § 3121(a)(5)(E) (Supp. I 1983)) (emphasis added).

Additionally, Congress in 1983 overturned the general premise of *Rowan* by enacting provisions that "decoupled" the interpretations of FICA and FUTA wages from the interpretation of wages for income-tax purposes. The FICA "decoupling" clause applied to remuneration paid after December 31, 1983,[6] and provided:

---

**5.** Social Security Amendments of 1983, § 324(d)(1), 97 Stat. 125.

**6.** 1983 Act, § 327(d)(1), 97 Stat. 127.

Nothing in the regulations prescribed for purposes of chapter 24 (relating to income tax withholding) which provides an exclusion from "wages" as used in such chapter shall be construed to require a similar exclusion from "wages" in the regulations prescribed for purposes of this [FICA] chapter.

26 U.S.C. § 3121(a) (Supp. I 1983).

This "decoupling" provision was enacted because of the congressional view that the objectives of the social security system differ from those of the income-tax withholding system, and that the Treasury Department should therefore be permitted to treat those systems differently. *See* S.Rep. No. 23, 98th Cong., 1st Sess. 42, *reprinted in* 1983 U.S.Code Cong. & Ad.News 143, 183.

In 1984, in the Deficit Reduction Act of that year, Congress altered the date on which the FICA "decoupling" provision of the 1983 Act was to become effective:

*The amendments made by subsection (b) ... [the FICA "decoupling" provision] shall apply to remuneration ... paid after March 4, 1983, and to any such remuneration paid on or before such date which the employer treated as wages when paid.*

Pub.L. No. 98-369, § 2662(g), 98 Stat. 494, 1160 (emphasis added).

Against this background, the district court determined that 65-208 was invalid as of 1980 because it conflicted with the specific statutory exclusion from FICA wages of amounts "paid by an employer" for retirement annuities. *Canisius College v. United States*, No. 84-1126, slip op. at 5 (W.D.N.Y. Mar. 10, 1968). The court concluded, however, that 65-208 had been retroactively codified by the 1984 provision

of the Deficit Reduction Act. *Id.* at 6-7. It therefore granted summary judgment for the government. This appeal by Canisius followed.

### III. *Validity of 65-208*

We agree with the district court that 65-208 was invalid as of 1980 as contrary to the statutory exclusion from FICA wages.[7] We conclude also that even were the ruling not invalid on that ground, it was contrary to the *Rowan* requirement that "wages" be similarly interpreted for FICA and income-tax withholding purposes.[8]

### A. *Validity under Statutory Exclusion*

 We think it is clear that the payments made by Canisius under its salary reduction plan fall within the plain language of the exclusion from FICA wages, in effect during the tax year in issue, of amounts *"paid by an employer* for ... annuities ... under a plan ... on account of ... retirement." 26 U.S.C. § 3121(a)(2) (emphasis added). The amounts were not paid out of employee salaries. To the contrary, the employees had agreed to be paid less salary in the future, and, as consideration for those agreements, the amounts contributed for the annuities were to be paid out of Canisius' funds.

This conclusion that salary reduction plan payments are within the FICA wage exclusion is supported by the legislative history of the provision. That history indicates that the exclusion covered *"all payments"* made by the employer to or on behalf of an employee for retirement. H.R.Rep. No. 728, 76th Cong., 1st Sess.,

---

**7.** In this regard, our determination differs from that of the Third Circuit in *Temple University v. United States*, 769 F.2d 126, 129-30 (3d Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986). The court in *Temple* concluded that 65-208 was a correct interpretation of the statutory exclusion from FICA wages, which, in the court's view, did not encompass employer payments made under salary reduction plans. Our ultimate determination in this case is, however, in harmony with the decision in *Temple.*

**8.** It is to be noted that statutory interpretation as reflected in a revenue ruling does not have the force of law and is of little aid in interpreting a tax statute. *See Dixon v. United States,* 381 U.S. 68, 73, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1965); *Biddle v. Commissioner,* 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431 (1938); *Temple University v. United States, supra,* 769 F.2d at 137 (Weis, J., dissenting).

*reprinted in* 1939–2 C.B. 538, 548 (emphasis added). It further indicates that:

> These payments will be excluded *even though the amount or possibility of such payments is taken into consideration in fixing the amount of remuneration* and even though such payments are required, either expressly or impliedly, by the contract of employment.

*Id.* (emphasis added); *see* S.Rep. No. 734, 76th Cong., 1st Sess., *reprinted in* 1939–2 C.B. 565, 575–76.

> The reason for the exclusion was to save employers time and money but what is more important is that it will eliminate any reluctance on the part of the employer to establish such plans due to the additional tax cost.

H.Rep. No. 728, 76th Cong., 1st Sess., *reprinted in* 1939–2 C.B. 538, 543. The Social Security Board recommended to the Congress

> Exclusion from the definition of wages of all payments made by an employer to or on behalf of an employee under a plan or system providing for retirement benefits, dismissal wages, disability benefits, and medical and hospital expenses. The purpose of this proposal *is to avoid discouraging plans of the nature described.*

Social Security Board, Report Recommending Changes in the Social Security Act, H.R.Doc. No. 110, 76 Cong., 1st Sess. 12 (1939) (emphasis added).

Given the broad purpose manifested by this legislative history of encouraging employers to establish private retirement plans even at the expense of the FICA wage base, we think it follows that the wage exclusion was intended to cover payments made under salary reduction plans.

An additional factor impelling the conclusion that the FICA wage exclusion encompassed payments under section 403(b) salary reduction plans is that such payments are considered "contributed by [the] employer" for purposes of section 403(b), and so are excludable from employee gross income. *See* 26 U.S.C. § 403(b); Treas.Reg. § 1.403(b)–1(b)(3), T.D. 6783, 29 Fed.Reg. 18,360 (1964). Revenue Ruling 65–208 was therefore in conflict not only with the plain language of the exclusion from FICA wages for the amount "paid by an employer" but also with the interpretation accorded to the similar statutory language in section 403(b).[9]

### B. *Validity Under Rowan*

■ Even if 65–208 were to be viewed as not in conflict with a specific statutory exclusion from FICA wages, it would nonetheless be contrary to *Rowan*. For it included an amount in FICA wages that was *not* included in wages for income-tax withholding purposes and was thus inconsistent with the *Rowan* requirement of parallel treatment of wages for FICA and income-tax purposes.

### IV. *Retroactive Validation of Tax Paid Under 65–208*

■ We now consider whether FICA taxes paid in conformity with Revenue Ruling 65–208 were retroactively validated by Congress in 1984. Our discussion begins with the *1983* "decoupling" provision:

> Nothing in the regulations prescribed for purposes of chapter 24 (relating to income tax withholding) which provides an exclusion from "wages" as used in such chapter shall be construed to require a similar exclusion from "wages" in the

---

**9.** As we have previously indicated, the rationale given in 65–208 itself for this discrepancy in the interpretation of the similar terminology in section 403(b) and in the FICA wage exclusion was that the "purposes of section 403(b) . . . and [of the FICA wage exclusion] are substantially different," and that therefore the fact that an amount was considered to be "contributed by the employer" for purposes of section 403(b) did not require a similar determination that it was an amount "paid by an employer" for purposes of the FICA wage exclusion. This rationale closely resembles that found invalid in *Rowan* and so is clearly inadequate to sustain a conclusion that, *as of 1980*, 65–208 constituted a proper interpretation of original legislative intent regarding the specific statutory exclusion from FICA wages for amounts "paid by an employer" for annuities.

regulations prescribed for purposes of this [FICA] chapter.

26 U.S.C. § 3121(a) (Supp. I 1983). By this provision it is apparent that Congress intended to overturn the underlying premise of *Rowan* by permitting the Treasury Department to interpret the term "wages" differently from FICA and for income-tax withholding purposes, thereby validating prospectively regulations that had been invalid because of divergent interpretation.[10]

We next turn to the 1984 provision: The amendments made by subsection (b) ... [the 1983 FICA "decoupling" provision] *shall apply* to remuneration ... paid after March 4, 1983, and *to any such remuneration paid on or before such date which the employer treated as wages when paid.*

1984 Act § 2662(g) (emphasis added).

It is manifest that this 1984 provision makes the validating function of the 1983 "decoupling" clause retroactively applicable to "remuneration paid on or before [March 4, 1983] which the employer treated as wages when paid." And "remuneration ... treated as wages when paid" can only refer to remuneration that when paid was subject to taxation as "wages" pursuant to regulations previously unlawful under *Rowan*. So, the provision by its literal terms retroactively validates taxation previously unlawful because levied under regulations in conflict with *Rowan*.

The legislative history makes it clear, however, that Congress enacted the 1984 provision because of its concern as to the possible impact of *Rowan* on the validity of 65–208, and its concern that refunds of taxes paid in conformity with that ruling might be required:

If the 1965 revenue ruling [65–208] were determined to be invalid, then employers and employees would be eligible for refunds for open years because taxable

wages would be lower. In addition, wages for benefit computation purposes would be reduced, leading in some cases to reduction of social security benefits being paid to current beneficiaries and recoupment of a portion of benefits which have been paid in recent years on the basis of wage records which included the salary reduction contributions.

H.R.Rep. No. 432, 98th Cong., 2d Sess. 1658, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1280 (emphasis added). Congress also wished to avoid the possibility that the originally prospective effective dates of the 1983 "decoupling" provisions

could be cited as demonstrating Congressional intent that the reasoning of the *Rowan* decision should generally apply before these dates to types of remuneration other than meals and lodging ... *e.g., to contributions under a salary reduction agreement to tax-sheltered annuities (sec. 403(b)).*

*Id.* (emphasis added). Thus, we think it evident that Congress intended to preclude the possibility of refunds of FICA taxes paid in conformity with 65–208 on amounts contributed under section 403(b) salary reduction plans.

As we have previously indicated, the 1984 provision, by its literal terms, retroactively validates only taxes levied in conformity with regulations previously invalid under *Rowan*. However, we find the legislative intent so clear as to prevail. Statutory language is ordinarily regarded as conclusive "[a]bsent a clearly expressed legislative intention to the contrary." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added); *accord Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983) (same). The literal wording of the statute is "not the sole index to legislative intent.

---

10. The legislative history of the provision indicates that Congress intended to address both Treasury Department regulations and revenue rulings. *See* S.Rep. No. 23, 98th Cong., 1st Sess. 42, *reprinted in* 1983 U.S.Code Cong. & Ad.News 143, 183 (determination of whether amounts are to be included in social security wage base is to be made without regard to whether the amounts are treated as wages for income-tax withholding). Consequently, references hereafter to "regulations" also refer to revenue rulings.

It cannot prevail over strong contrary indications in the legislative history...." *Lange v. United States,* 443 F.2d 720, 722–23 (D.C.Cir.1971) (footnote omitted); *accord Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983) (court should go beyond the literal language of statute if reliance on language would defeat plain purpose of statute); *In re Adamo,* 619 F.2d 216, 222 (2d Cir.) (court would not apply statute in accord with its literal meaning where that would pervert its manifest purpose), *cert. denied,* 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980); *In re Miracle Mart, Inc.,* 396 F.2d 62, 64 (2d Cir.1968) (literal language of statute not relied upon where congressional intent would be nullified). Here, the legislative history is "very clear.... [that] Congress intended, through the 1984 amendments, to *eliminate* the very type of refund sought in the instant case." *Temple University v. United States, supra,* 769 F.2d at 133 (emphasis in original).

In short, we conclude that the 1984 provision retroactively validated previously unlawful FICA taxes paid on amounts contributed under salary reduction plans in conformity with Revenue Ruling 65–208. We now consider whether such retroactive validation is constitutional.

**V.** *Constitutionality of Retroactive Tax*

■ Under *Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938), a retroactive tax is constitutional unless its application is so "harsh and oppressive" as to violate due process. This "harsh and oppressive" test does not differ from the test of constitutionality applicable to economic legislation generally, namely, that such legislation is constitutional unless Congress has acted in an arbitrary and irrational way. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 733, 104 S.Ct. 2709, 2720, 81 L.Ed.2d 601 (1984); *see Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). However, the retroactive application of the statute must be justified by a rational purpose. *Pension*

*Benefit Guaranty Corp.,* 467 U.S. at 730, 104 S.Ct. at 730; *Long Island Oil Products Co. v. Local 553 Pension Fund,* 775 F.2d 24, 27 (2d Cir.1985) (retroactive statute is constitutional if retroactive application is justified by legitimate legislative purpose furthered by rational means).

■ Among the factors to be considered in an assessment of whether a retroactive statute is harsh and oppressive in application is whether it abrogates vested rights. *See* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 696 (1960) (traditional principle used in assessing constitutionality of retroactive law is that statute may not abrogate vested rights, but term "vested rights" is conclusory—a right is vested when so far perfected that it cannot be taken away by statute); *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 602 (Fed.Cir.) (early Supreme Court cases concluded that retroactive statutes could not abolish property rights; later cases placed greater weight on policy considerations and established multifactor inquiry), *modified on other grounds,* 771 F.2d 480 (Fed.Cir. 1985). However, retroactive legislation is not unconstitutional merely because it upsets settled expectations or because it effectively imposes a new liability on a past act. *See Pension Benefit Guaranty Corp.,* 467 U.S. at 729–30, 104 S.Ct. at 2717–18; *Usery,* 428 U.S. at 16, 96 S.Ct. at 2892.

No vested right of Canisius was impaired by retroactive application of the 1984 provision. *Forbes Pioneer Boat Line v. Board of Commissioners,* 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922), relied upon by Canisius, is not to the contrary. In *Forbes,* the plaintiff steamboat company had received a favorable final judgment in an action brought to recover tolls that had been unlawfully collected on passages through the lock of a canal. The state legislature enacted a law the day the judgment was issued purporting to retroactively validate the collection of tolls; the *Forbes* Court found the law unconstitutional. Canisius contends that the 1984 provi-

sion is similarly unconstitutional because it deprives Canisius of its right to a refund of FICA taxes. But Canisius, unlike the *Forbes* plaintiff, has no final judgment establishing such a right, nor does it have any other basis for claiming a vested right to such a refund. *See United States v. Heinszen & Co.,* 206 U.S. 370, 390–91, 27 S.Ct. 742, 748, 51 L.Ed. 1098 (1907) (Congress could ratify admittedly unlawful collections of duties even after plaintiff had brought action to recover the duties paid); *Western Union Telegraph Co. v. Louisville & Nashville Railroad Co.,* 258 U.S. 13, 20, 42 S.Ct. 258, 260, 66 L.Ed. 437 (1922) (where telegraph company had brought suit alleging right to easement under eminent domain statute, company did not have right so far vested under state law as to preclude change in statute that destroyed any such right of easement); *Taxpayers For The Animas-La Plata Referendum v. Animas-La Plata Water Conservancy District,* 739 F.2d 1472, 1477 (10th Cir. 1984) (Supreme Court has not hesitated to uphold legislation which has mooted pending lawsuits and nullified accrued causes of action).[11]

■ Another factor to be considered in assessing the constitutionality of a retroactive statute is whether the taxpayer relied on prior law so that, had he been able to foresee enactment of the legislation, he would have acted to avoid the tax. *See Usery,* 428 U.S. at 17 n. 16, 96 S.Ct. at 2893 n. 16; *Blodgett v. Holden,* 275 U.S. 142, 147, 48 S.Ct. 105, 106, 72 L.Ed. 206 (1927) (it is wholly unreasonable that one who in good faith and without slightest premonition of such consequence made absolute disposition of property by gift should thereafter be required to pay charge for so doing), *modified on other grounds,* 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206 (1928);

*Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250, 1262 (3d Cir. 1978) (where retroactivity is challenged a critical question often is how conduct would have differed if rule in issue had been applied from the start).

Here, the 1984 provision merely ratifies past action of the Treasury Department taken in conformity with longstanding department practice. Ruling 65–208 was promulgated in 1965, and nothing suggests that taxpayers, in planning employee benefit programs, relied on an assumption that amounts paid under salary reduction plans in 1980 would escape FICA taxation. *See Swayne & Hoyt, Ltd. v. United States,* 300 U.S. 297, 302, 57 S.Ct. 478, 480, 81 L.Ed. 659 (1937) (validating statute was constitutional where consequences of retroactive application were free of elements of novelty and surprise). Thus, there is no element of taxpayer reliance on prior law.

■ The length of the period affected is an additional factor to be considered in determining whether retroactive legislation is unduly harsh and oppressive in application. Retroactive tax law rarely concerns a time period longer than the year preceding passage of the legislation. *See United States v. Darusmont,* 449 U.S. 292, 296, 101 S.Ct. 549, 551, 66 L.Ed.2d 513 (1981) (per curiam) (the retroactive feature of a tax statute usually has application only to the portion of current calendar year preceding date of its enactment). In the present case, the 1984 provision retroactively affects approximately a four-year period, from the 1980 tax year in issue, to the year of the provision's enactment. Despite the lengthy period affected, retroactive application of the provision is not impermissible. There is nothing intrinsic in the "harsh and oppressive" test of *Welch v. Henry,* 305 U.S. at 147, 59 S.Ct. at 125, or in the

---

**11.** Canisius' argument that the 1984 provision violates the constitutional doctrine of separation of powers by "retroactively overruling" the *Rowan* decision is without merit. The 1984 provision did not impair the judgment in *Rowan*—indeed, as previously noted, Congress codified the specific *Rowan* decision. Nor was the 1984 provision intended to affect the rights of a litigant in a particular case. *See Temple University v. United States,* 769 F.2d at 134 n. 4 (Congress by the 1984 provision did not violate separation of powers doctrine); *cf. Hurtado v. California,* 110 U.S. 516, 535–36, 4 S.Ct. 111, 120–21, 28 L.Ed. 232 (1884) (law must not be special rule for particular person or particular case).

"arbitrary and irrational" test of *Usery*, 428 U.S. at 15, 96 S.Ct. at 2892, that requires a one-year bench mark as the constitutional limit of retroactivity. To the contrary, the nature of those tests, requiring that the court "[i]n each case ... consider the nature of the tax and the circumstances in which it is laid," *Welch*, 305 U.S. at 147, 59 S.Ct. at 125, suggests that the length of the period retroactively affected should be considered merely as a factor—albeit a significant factor—in the overall assessment of the constitutionality of the legislation.

In light of its curative purpose, we find the provision constitutional notwithstanding the long period of retroactivity. Congress may ratify acts it could originally have authorized, *Swayne & Hoyt, Ltd. v. United States, supra*, 300 U.S. at 301–02, 57 S.Ct. at 479–80, and curative legislation is typically entitled to be liberally construed, *Temple University, supra*, 796 F.2d at 134; 2 C. Sands, Sutherland Statutory Construction § 41.11, at 289–90 (4th ed. 1973). Congress' concern was that a failure to make retroactively lawful the taxes in issue, which had for years been collected in conformity with 65–208, would require refunds of monies that had provided a portion of the tax base of the social security system and necessitate some reduction of benefits to and recoupment of past benefits from current recipients. *See* H.R.Rep. No. 432, 98th Cong., 2d Sess. 1658, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1280–81. Considering the absence of either vested interests or taxpayer reliance, Congress' decision to address its concern by making retroactively lawful the taxes already collected is neither irrational, nor a harsh and oppressive way of "apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens," *Welch v. Henry*, 305 U.S. at 146, 59 S.Ct. at 125. *Cf. Graham & Foster v. Goodcell*, 282 U.S. 409, 417–18,

426–29, 51 S.Ct. 186, 192–93, 75 L.Ed. 415 (1931) (Court found constitutional retroactive statute designed to preclude necessity of refunding taxes that over three years earlier had been collected after limitations period had expired); *Rafferty v. Smith, Bell & Co.*, 257 U.S. 226, 231–32, 42 S.Ct. 71, 66 L.Ed. 208 (1921) (retroactive validation by Congress of duties unlawfully collected some four years earlier held constitutional).

In sum, because the retroactive application of the 1984 provision is curative in nature, rational in purpose, and not harsh or oppressive in result, the provision passes constitutional muster.

### VI. *Conclusion*

For the reasons stated, we hold that Canisius is not entitled to a refund of the FICA taxes in issue.[12] We therefore affirm the district court's grant of summary judgment for the government.

---

**12.** The Third Circuit and several district courts have held to the same effect. *See Temple University v. United States, supra*, 769 F.2d 126; *University Health Center, Inc. v. United States*, 622 F.Supp. 88 (D.Vt.), *appeal dismissed* No. 85–6340 (2d Cir. Dec. 31, 1985); *Xavier University v. United States*, 633 F.Supp. 15 (S.D.Ohio), *appeal pending*, No. 86–3328 (6th Cir.1986); *New England Baptist Hospital v. United States*, 634 F.Supp. 810 (D.Mass.1986).