Robert Morris COLLEGE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 459–85T.

United States Claims Court.

Jan. 16, 1987.

Alan A. Garfinkel, Pittsburgh, Pa., for plaintiff; Berkman Ruslander Pohl Lieber & Engel, of counsel.

Douglas A. Richards, Washington, D.C., with whom were Mildred L. Seidman and Asst. Atty. Gen. Roger M. Olsen, for defendant.

## OPINION

NETTESHEIM, Judge.

This case is similar to other cases leading to five trial or appellate court decisions [1] rejecting claims for refunds of social security taxes paid pursuant to the Federal Insurance Contribution Act ("FICA") after Congress closed a gap left by legislation responding to the Supreme Court's decision in *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981) (*"Rowan"*). The taxpayers in these cases urged that *Rowan* required uniform treatment of salary reductions used by tax exempt organizations to purchase annuities for purposes of withholding both federal income tax and social security payments. Congress enacted legislation to foreclose this result in 1983 and in 1984 barred refund of payments made before March 4, 1983. The question to be determined on cross-motions for summary judgment is whether the amounts of certain voluntary salary reductions used to purchase retirement annuity contracts are exempt from the Social Security tax imposed under FICA. Defendant also crossmoved for judgment in its favor on a counterclaim for FICA contributions that erroneously were refunded to plaintiff. Plaintiff did not respond to defendant's crossmotion, however. Argument on these motions is deemed unnecessary.

## FACTS

The material facts are not in dispute. Plaintiff Robert Morris College ("plaintiff"), a Pennsylvania nonprofit corporation, is an institution of higher education exempt from Federal income tax under the Internal Revenue Code of 1954, 26 U.S.C. § 501(c)(3) (1982) (the "I.R.C."). Plaintiff seeks a refund of FICA payments for the years 1979–1983 in the amount of $100,-933.40, representing combined employer/employee contributions net of a refund of payments for 1980.

Plaintiff set up a retirement annuity plan known as the "Robert Morris College Supplemental Retirement Annuity Plan" for its employees under I.R.C. § 403(b). The plan provided for voluntary salary reductions for those employees desiring a retirement annuity contract. The amounts deducted were then applied by plaintiff to the purchase of an annuity contract. The plan provided that each annuity contract to which the salary reduction amounts were applied "is solely the property of the individual participant" and stipulated that a participating employee at any time could surrender his supplemental retirement annuities for full accumulation value. The contributions paid by plaintiff for its employees were excludable pursuant to I.R.C. § 403(b) from participating employees' gross income for federal income tax purposes. However, under Rev.Rul. 65–208, 1965–2 C.B. 383, plaintiff included in "wages" for FICA tax purposes the amounts contributed to the salary reduction plan. Plaintiff paid both employer and employee FICA taxes for the years 1979–1983.

Plaintiff timely filed claims for refund of FICA taxes for the years at issue, together with statutory interest thereon, on behalf of itself and its employees and its former employees from whom it had withheld FICA taxes under Rev.Rul. 65–208. Plaintiff claimed that the Supreme Court's decision in *Rowan* mandated uniform treatment of wages for FICA and federal income tax purposes. The Director of the

1. *Canisius College v. United States*, 799 F.2d 18 (2d Cir.1986); *Temple University v. United States*, 769 F.2d 126 (3d Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1985); *New England Baptist Hospital v. United States*, 634 F.Supp. 810 (D.Mass.1986), *aff'd*, 807 F.2d 280 (1st Cir. 1986) [aff'd, 807 F.2d 280 (1st Cir.1986)]; *Xavier University v. United States*, 633 F.Supp. 15 (S.D. Ohio), *appeal dismissed*, No. 86–3328 (6th Cir. Sept. 5, 1986); *University Health Center, Inc. v. United States*, 622 F.Supp. 88 (D.Vt.1985), *appeal dismissed*, No. 85–6340 (2d Cir. Dec. 31, 1985).

Philadelphia Service Center of the Internal Revenue Service (the "IRS"), after each of the respective claims were made, notified plaintiff of each disallowance in full. The letter in each case specified the continued validity of Rev.Rul. 65–208 as the sole reason for disallowance.

On January 28, 1985, the Chief, Taxpayer Assistance Section of the Philadelphia Service Center, refunded plaintiff's claim of overpayment of FICA taxes for 1980. Defendant disbursed four checks, in the combined amount of $26,450.22, as the sum paid by plaintiff to FICA, including interest. Plaintiff sought notification as to the reason for the FICA refunds, which formerly had been denied. In response the IRS took the position that the refund was in error. Plaintiff has not repaid the amount refunded.[2]

This lawsuit followed, but proceedings were suspended for three months pending consideration by the Supreme Court of the petition for writ of *certiorari* in *Temple University v. United States*, 769 F.2d 126 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1985).

## DISCUSSION

1. *Effect of the Social Security Amendments of 1983 and the Deficit Reduction Act of 1984 on plaintiff's claim for refund of FICA taxes*

Since the Internal Revenue Code of 1939, I.R.C. § 3121(a)(2)(A) (I.R.C. § 1426(a)(2) of the 1939 Code) excluded retirement from the definition of "wages" for FICA purposes:

(a) Wages.—For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash; except that such term shall not include

. . . .

(2) the amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, any employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally (or for his employees generally and their dependents) or for a class or classes of his employees (or for a class or classes of his employees and their dependents) on account of—

(A) retirement, or

(B) sickness or accident disability, or

(C) medical or hospitalization expenses in connection with sickness or accident disability, or

(D) death;

(3) any payment made to an employee (including an amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) on account of retirement; . . .

At issue in *Rowan* was whether meals and lodging provided by an employer to his employees for his own convenience constituted "wages" for FICA and the Federal Unemployment Tax Act ("FUTA"). The Supreme Court concluded that a Treasury regulation that excluded meals and lodgings from the definition of "wages" for federal withholding tax purposes could not treat "wages" differently for FICA and FUTA purposes absent express congressional intent to the contrary. Congress responded with the Social Security Amendments of 1983, § 327(b)(1), Pub.L. No. 98–21, 97 Stat. 65, 127 (codified at I.R.C. § 3121(a)–(a)(19) (Supp. I 1983) ("the 1983 Act")). As amended, I.R.C. § 3121(a) had the effect of decoupling the treatment of wages for purposes of withholding federal income taxes and FICA. Section 324(a)(3)(A) of the 1983 Act, 97 Stat. 123 (codified at I.R.C. § 3121(a)(5)), amended old I.R.C. § 3121(a) by striking retirement from the section 3121(a)(2) exclusions. The

---

2. It *should* be noted that one half of the disbursement by the IRS to plaintiff may have been distributed to its employees, but since plaintiff has failed to respond to defendant's claim that there was a refund error, plaintiff is deemed to be responsible for the entire sum.

1983 Act added a new section 324(a)(2)(C) (codified at § 3121(a)(5)(D)), which had the effect of including in the FICA wage base payments made pursuant to salary reduction agreements:

(a) WAGES.—For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash; except that such term shall not include—

. . . .

(2) the amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally (or for his employees generally and their dependents) or for a class or classes of his employees (or for a class or classes of his employees and their dependents), on account of—

(A) sickness or accident disability (but, in the case of payments made to an employee or any of his dependents, this subparagraph shall exclude from the term "wages" only payments which are received under a workmen's compensation law), or

(B) medical or hospitalization expenses in connection with sickness or accident disability, or

(C) death;

. . . .

(5) any payment made to, or on behalf of, an employee or his beneficiary—

Section 324(d)(1), 97 Stat. 125 (codified at I.R.C. § 3121 note,) provided that the amendments discussed were effective only for remuneration paid after December 31, 1983.

The Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2662(g), 98 Stat. 494, 1160 (codified at I.R.C. § 3121 note (Supp. II 1984) (the "1984 Act")), however, provided that the 1983 Act applied "after March 4, 1983, and to any such remuneration paid on or before such date which the employer treated as wages paid." Thus, the 1984 Act made the decoupling provision of the 1983 Act effective for years prior to 1983, thereby making express the intention of the 1983 Act that there be no refund for salary reduction amounts treated as "wages" for FICA.

Plaintiff contends that Congress intended the 1983 Act to codify the holding of *Rowan.* Plaintiff also admits the 1983 Act had a decoupling provision in which Congress expressly authorized different treatment for "wages" under FICA and federal income tax withholding. However, plaintiff maintains that section 324(d)(1) of the 1983 Act was intended by Congress to be prospective and therefore have no effect on their present claim. In support of this contention, plaintiff cites the Conference Report to the 1983 Act, which provided:

Subject to certain limitations, amounts paid by the employer for the purchase of a tax-sheltered annuity for an eligible employee are excluded from the employee's taxable income and social security wage base. Tax sheltered annuities may be purchased for employees of educational institutions and certain tax-exempt organizations. Tax sheltered annuities may be purchased pursuant to a salary reduction agreement.

H.R.Conf.Rep. No. 98–47, 98th Cong., 1st Sess. 115, 146, *reprinted in* 1983 U.S.Code Cong. & Ad.News 404, 436. Plaintiff argues that Congress thus conceded its present claim.

Defendant agrees with plaintiff that the 1983 Act codified *Rowan,* but differs with respect to the claim of a congressional concession for section 3121(a) falling prior to December 31, 1983. Defendant argues that Congress, by its decoupling provision, intended to codify Rev.Rul. 65–208, but did not intend the change merely to be prospective. According to defendant, Congress made express what it considered to be the proper treatment of salary reduction amounts. The codification of Rev.Rul. 65–208 was in response to its questionable vitality after *Rowan* and not a concession

that it was inapplicable or invalid prior to passage of the 1983 Act.

Defendant contends that if there is any ambiguity as to congressional intent after the 1983 Act, it was certainly cleared up by the 1984 Act, whereby Congress made retroactive the decoupling provision of the 1983 Act. Plaintiff argues that Congress only intended to make retroactive the *Rowan* decoupling provision which provides that the IRS treat federal income tax withholding and FICA differently. Since its section 3121(a) claim is not dependent on *Rowan*, the 1984 Act addressed to correct *Rowan* should have no effect.

Resolution of this case was suspended pending proceedings in *Temple University v. United States*, so the Third Circuit's decision serves as a departure point for analysis. The court held that Rev.Rul. 65–208 was proper because I.R.C. § 3121(a)(2) did not exclude from FICA wages employer payments made under salary reduction plans. 769 F.2d at 131 n. 3; *accord New England Baptist Hospital v. United States*, 634 F.Supp. 810 (D.Mass.1986), *appeal pending*, No. 86–1540 (1st Cir. June 4, 1986); *Xavier University v. United States*, 633 F.Supp. 15 (S.D.Ohio), *appeal dismissed*, No. 86–3328 (6th Cir. Sept. 5, 1986); *University Health Center, Inc. v. United States*, 622 F.Supp. 88 (D.Vt.1985), *appeal dismissed*, No. 85–6340 (2d Cir. Dec. 31, 1985). *Contra Canisius College v. United States*, 799 F.2d 18, 22 (2d Cir.1986). *Temple University* also held that the 1984 Act retroactively barred refund claims for FICA payments based on these contributions. 769 F.2d at 133; *accord Canisius College*, 799 F.2d at 24.

The same two arguments were made by the taxpayer and ruled on in *Temple University* that plaintiff urges here, *viz.*, (1) that since 1939 the I.R.C. had excluded salary reduction amounts from the FICA wage base and that *Rowan* did not reach salary reduction amounts and (2) that the 1984 Act did not effect the exclusion from refund of amounts that the employer had treated as "wages" for FICA.

■ Although plaintiff claims the first question forms its principal argument, defendant correctly points out that resolution of the second is decisive. *Temple University* and *Canisius College* held that the 1984 Act applied to payments made before March 4, 1983, consistent with Rev.Rul. 65–208. Therefore, the 1983 Act did not exclude from FICA annuity payments treated as "wages" before March 4, 1983. The Third Circuit's reasoning follows:

Plaintiff stresses the actual failure of Congress, through inadvertence or otherwise, to make the specific section 3121 amendments retroactive and argues that the changes should, on the basis of this failure, not be seen as applying to this case. In support of its position, plaintiff cites *Iselin v. United States*, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566 (1926). In *Iselin*, the Supreme Court, through Justice Brandeis, stated that "[w]hat the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Id.* at 251, 46 S.Ct. at 250.

It is generally true that courts should look to the plain language of, and not rewrite, statutes. *See, e.g., id.; Tracy Leigh Development Corp. v. Government of the Virgin Islands*, 501 F.2d 439, 442 (3d Cir.1974) (relying on Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527 (1947)). However, the Supreme Court recently stated as follows: "We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. *Absent a clearly expressed legislative intention to the contrary*, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added). In the *Iselin* case cited by plaintiff, there was no "clearly expressed legislative intention." In the instant case, however, Congress'

intent, as expressed in the legislative history, *see supra,* is very clear. Congress intended, through the 1984 amendments to *eliminate* the very type of refund sought in the instant case. Thus, in light of the recent guidance from the Supreme Court, the statute should be construed so as to reach this result. Furthermore, "[i]t is a well settled rule that statutory exemptions from taxation, being a matter of grace, are to be strictly and narrowly construed." *King Christian Enterprises, Inc. v. Government of the Virgin Islands,* 345 F.2d 633, 637 (3d Cir.1965), *quoted in Tracy Leigh Development Corp. v. Government of the Virgin Islands,* 501 F.2d at 443. We therefore do not see section 3121(a) as supporting plaintiff's claim for a refund.

769 F.2d at 132–33 (emphasis in original). The Second Circuit in *Canisius College* stated:

The legislative history makes it clear, however, that Congress enacted the 1984 provision because of its concern as to the possible impact of *Rowan* on the validity of 65–208, and its concern that refunds of taxes paid in conformity with that ruling might be required:

"If the 1965 revenue ruling [65–208] were determined to be invalid, then employers and employees would be eligible for refunds for open years because taxable wages would be lower. In addition, wages for benefit computation purposes would be reduced, leading in some cases to reduction of social security benefits being paid to current beneficiaries and recoupment of a portion of benefits which have been paid in recent years on the basis of wage records which included the salary reduction contributions." H.R.Rep. No. 432, 98th Cong., 2d Sess. 1658, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1280 (emphasis added). Congress also wished to avoid the possibility that the originally prospective effective dates of the 1983 'decoupling' provisions

"could be cited as demonstrating Congressional intent that the reasoning of the *Rowan* decision should generally apply before these dates to types of remuneration other than meals and lodging ... *e.g., to contributions under a salary reduction agreement to tax-sheltered annuities (sec. 403(b))."*

*Id.* (emphasis added). Thus, we think it evident that Congress intended to preclude the possibility of refunds of FICA taxes paid in conformity with 65–208 on amounts contributed under section 403(b) salary reduction plans.

As we have previously indicated, the 1984 provision, by its literal terms, retroactively validates only taxes levied in conformity with regulations previously invalid under *Rowan.* However, we find the legislative intent so clear as to prevail. Statutory language is ordinarily regarded as conclusive *"[a]bsent a clearly expressed legislative intention to the contrary." Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) (emphasis added); *accord Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 110, 103 S.Ct. 986, 990, 74 L.Ed.2d 845 (1983) (same). The literal wording of the statute is "not the sole index to legislative intent. It cannot prevail over strong contrary indications in the legislative history...." *Lange v. United States,* 443 F.2d 720, 722–23 (D.C.Cir.1971) (footnote omitted); *accord Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983) (court should go beyond the literal language of statute if reliance on language would defeat plain purpose of statute); *In re Adamo,* 619 F.2d 216, 222 (2d Cir.) (court would not apply statute in accord with its literal meaning where that would pervert its manifest purpose), *cert. denied,* 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980); *In re Miracle Mart, Inc.,* 396 F.2d 62, 64 (2d Cir.1968) (literal language of statute not relied upon where congressional intent would be nullified). Here, the legislative history is "very clear ... [that] Congress intended, through the 1984 amendments, to eliminate the very type

of refund sought in the instant case." *Temple University v. United States, supra,* 769 F.2d at 133 (emphasis in original).

799 F.2d at 24–25 (emphasis in original).

Plaintiff attacks *Temple University*'s approach that the 1983 amendments codified Rev.Rul. 65–208, pointing out, consistent with the dissent in *Temple University,* 769 F.2d at 137 (dissenting op.), that a revenue ruling cannot be codified. *See also Canisius College,* 799 F.2d at 23 (Rev. Rul. 65–208 inconsistent with I.R.C. § 3121(a)(2) and *Rowan* ). The *Temple University* dissent is correct. The legal dignity of a revenue ruling does not rise beyond exposition of a legal opinion of the IRS unendorsed by the Secretary of the Treasury or Congress. However, the legislative history of the 1984 Act manifests an explicit congressional purpose to deny claims for refund by taxpayers like plaintiff that treated annuity contributions as "wages" when paid prior to March 4, 1983.

Plaintiff also says that *Temple University* impermissibly relied on the legislative history of the 1983 Act to construe I.R.C. § 3121(a). Assuming this were so, the legislative history expresses the intention of the present legislation, *i.e.,* the 1984 Act, to foreclose refunds of contributions under a salary reduction agreement to tax-sheltered annuities, even if *Rowan* did not reach these payments. H.R.Rep. No. 98–432, 98th Cong., 1st Sess. 1658, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1280–81 reads:

> The Provision in the [Social Security] Amendments applies to remuneration paid after December 31, 1983, for FICA and social security benefit purposes and to remuneration paid after December 31, 1984, for FUTA purposes. Thus, it is possible that this provision could be cited as demonstrating Congressional intent that the reasoning of the *Rowan* decision should generally apply before these dates to types of remuneration other than meals and lodging excluded under section 119, *e.g., to contributions under a salary reduction agreement to tax-*

*sheltered annuities (sec. 403(b)).* These contributions have been held by the Treasury Department to be taxable for FICA purposes (Revenue Ruling 65–208) even though they are exempt by regulation from income tax withholding. If the 1965 revenue ruling were determined to be invalid, then employers and employees would be eligible for refunds for open years because taxable wages would be lower. In addition, wages for benefit computation purposes would be reduced, leading in some cases to reduction of social security benefits being paid to current beneficiaries and recoupment of a portion of benefits which have been paid in recent years on the basis of wage records which included the salary reduction contributions.

### *Explanation of the Provision*

> In order to avoid the inference which this provision could raise, the bill clarifies the effective date of the provision overriding the *Rowan* decision so that the provision applies for all purposes other than the treatment of certain employer-provided meals and lodging, both to remuneration paid after March 4, 1983, which the employer treated as wages when paid. For example, if an employer treated as wages, for FICA and FUTA taxes (or both), the amounts contributed during 1982 to an employee's tax sheltered annuity pursuant to a salary reduction agreement, the FICA or FUTA taxes (as the case may be) paid by the employer and employee may not be refunded or credited. The Committee intends no inference as to the treatment of amounts paid on or before March 4, 1983, which the employer did not treat as wages when paid.

(Footnote omitted) (quoted in part in *Temple University,* 769 F.2d at 132).

2. *Constitutionality of retroactive bar of refunds of FICA tax*

a. *Separation of powers*

In *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871), the

Supreme Court struck down a federal statute that would have directed the outcome of a pending case. The Court held this to be an unconstitutional limitation on its jurisdiction. Plaintiff claims the *Klein* rationale is applicable in the present case because the retroactive legislation (the 1984 Act) interferes with the court's function by directing the court to rule for defendant and that separation of powers concerns necessarily are implicated.

The present case can be distinguished from *Klein.* At the time of enactment, plaintiff's claim was not pending before any court. The legislation was intended to codify what Congress and plaintiff considered the law to be, and the legislation did not direct a decision in a particular case. Since there were no cases against which the 1984 Act was directed, it cannot be argued persuasively that the intent and effect of the 1984 Act were to interfere with the judicial function. The court deems persuasive the reasoning of *Canisius College,* 799 F.2d at 25 (vested right not impaired by retroactive application of the 1984 provision), and *Temple University,* 769 F.2d at 126 (separation of powers claim without merit where law was changed generally, even though change has broad application). In both cases the appeals courts found no basis for a similar claim based on the separation of powers.

b. *Due process violation*

Plaintiff makes a due process claim asserting that section 2662(g) of the 1984 Act created a liability that formerly did not exist. Plaintiff contends the creation of this liability deprives it of its right to recover an overpayment. In support of its claim, plaintiff cites *Graham & Foster v. Goodcell,* 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415 (1930), which held that Congress could not create retroactively a liability where none previously existed. Plaintiff argues the 1984 Act creates a liability where none previously existed, as the Supreme Court ruled in *Rowan.*

Defendant argues that plaintiff had no vested right to the amount it claimed to have overpaid; therefore, Congress may enact retroactive legislation with impunity if it is justified by a rational legislative purpose. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). Congress passed the 1984 Social Security legislation to protect the fund and acted rationally to effectuate this end. Congress was only attempting to codify what it deemed proper treatment of amounts paid into FICA in order to preclude claims like the one made in the present case.

Plaintiff claims that since the 1984 Act covers retroactively such a long period of time, it violates due process. Plaintiff believes that *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1935), set a one-year limit on retroactive legislation and urges that this limitation should control in this case. The test in *Welch* was not as plaintiff claims, but whether the retroactive tax in its application is "so harsh and oppressive" as to violate due process. 305 U.S. at 147, 59 S.Ct. at 126.

■ Arguing that a one-year limitation on retroactivity does not control, defendant cites *Hospital Data Center S.C. v. United States,* 225 Ct.Cl. 158, 634 F.2d 541 (1980), a case in which the United States Court of Claims ruled that limiting plaintiffs to a refund for a three-year period did not amount to retroactive legislation. The court agrees that the time period is not the relevant factor, but rather the effect of the legislation.

■ The retroactive legislative was not harsh and oppressive. Plaintiff was not deprived of any amounts to which it was entitled, nor did the legislation change its status by requiring plaintiff to pay additional amounts. Instead, Congress in pursuit of rational purposes—protection of the Social Security base and prevention of the potential disruption *Rowan* could cause—codified a revenue ruling which had been in force during the period in question. Plain-

tiff complied with Rev.Rul. 65–208 throughout, and it should not be considered arbitrary or unfair that it cannot reclaim amounts paid to Social Security which it never expected to be refunded. *See Canisius College*, 799 F.2d at 26–27; *Temple University*, 769 F.2d at 135; *New England Baptist Hospital*, 634 F.Supp. at 812.

### c. *Equal protection*

■ Plaintiff argues that Congress has created an impermissible classification by imposing a tax on employers like plaintiff that complied with Rev.Rul. 65–208 and are now foreclosed from obtaining refunds under the 1984 Act, while allowing employers who failed to follow Rev.Rul. 65–208 to go tax-free. Plaintiff claims this result arbitrarily, capriciously, and impermissibly imposes different tax liabilities on two employers identically or similarly situated in violation of the due process clause of the fifth amendment.

In order to support a violation of fifth amendment due process rights under equal protection, passage of the act creating the classification plaintiff questions must lack a rational basis. *See generally Augusta Towing Co. v. United States*, 5 Cl.Ct. 160, 163–65 (1984). In *Regan v. Taxation with Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1982), the Supreme Court remarked that in the area of economic legislation

> [l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes. More than 40 years ago we addressed these comments to an equal protection challenge to tax legislation: ... "Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification."

This court in *Augusta Towing*, also a tax refund case, addressed in detail the situations that have been held to constitute discrimination between identically or similarly situated taxpayers. None is present here.

Finally, plaintiff has not taken issue with defendant's counterclaim, and defendant established entitlement thereto as required by RUSCC 56(a).

### CONCLUSION

Plaintiff seeks a decision from this court because two federal courts of appeals have rejected the same claim. There is nothing improper about seeking the views of different circuits on matters of tax law. The burden becomes difficult once a reasonable, thorough analysis unfavorable to a similar plaintiff is given by another court, especially an appellate court. The *Temple University* and *Canisius* decisions ably treated the same arguments made in this court on what this court views as the dispositive issue.

Based on the foregoing, defendant's cross-motion for summary judgment is granted, and plaintiff's motion for summary judgment is denied. Accordingly,

IT IS ORDERED, as follows:

1. The Clerk of the Court shall dismiss the complaint and enter judgment for defendant in the amount of $26,450.22, plus interest as provided for by law.

2. The Clerk of the Court shall serve a copy of this opinion on counsel in *Newark Beth Israel Medical Center*, No. 485–85T.