**NEW ENGLAND BAPTIST HOSPITAL,**
Plaintiff, Appellant,

v.

**UNITED STATES of America,**
Defendant, Appellee.

No. 86–1540.

United States Court of Appeals,
First Circuit.

Argued Oct. 9, 1986.
Decided Dec. 17, 1986.

David A. Kapelman, New York City, with whom Barry M. Altman and Peckham, Lobel, Casey & Tye, Boston, Mass., were on brief, for plaintiff, appellant.

Michael J. Roach, with whom Michael L. Paup and Jonathan S. Cohen, Tax Div., Dept. of Justice, Roger M. Olsen, Asst. Atty. Gen., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for defendant, appellee.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

BOWNES, Circuit Judge.

Appellant New England Baptist Hospital (the Hospital) brought suit in district court for a refund of Federal Insurance Contributions Act (FICA) taxes it paid, and those withheld from wages, on amounts contributed to voluntary salary reduction annuity plans for its employees.[1] The district court held that the Hospital was not entitled to a refund and granted the government's motion for a summary judgment. 634 F.Supp. 810. We affirm.

## I. BACKGROUND

The Hospital is a nonprofit organization exempt from federal income taxation under section 501 of the Internal Revenue Code. *See* I.R.C. § 501 (1986). This status qualified it to establish voluntary salary reduction annuity plans for its employees under which amounts contributed by the Hospital in lieu of salary were excluded from the employees' gross income and from income tax withholding. *See* I.R.C. § 403(b). In accordance with the policy established in a 1965 Revenue Ruling, however, the Hospital withheld and paid FICA taxes on these amounts. On November 1, 1983, the Hospital filed a claim for a refund of $48,530.94 in FICA taxes it withheld and paid on salary reduction annuity plans during the tax years 1980, 1981, and 1982. The Hospital did not receive a determination on its claim within six months and filed suit in district court.

The Hospital's claim is based on the different treatment given very similar statutes governing FICA taxes and income tax withholding. It argues that the Treasury's policy of requiring contributors to section 403(b) salary reduction annuity plans to withhold and pay FICA taxes, while excluding the contributions from income tax withholding under similarly worded statutes, is unsupported by the statutes and contrary to congressional intent. The Hospital also

contends that this interpretation is contrary to *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981), in which the Supreme Court held that absent supportive congressional intent, similar definitions of wages cannot be interpreted differently for FICA, Federal Unemployment Tax Act (FUTA), and income tax purposes. Additionally, the Hospital argues that the 1983 and 1984 amendments to the Internal Revenue Code allowing different treatment of the salary reduction annuity plans for FICA and income tax withholding purposes cannot constitutionally be applied retroactively.

The district court rejected these arguments and granted the government's motion for a summary judgment. It followed *Temple Univ. v. United States*, 769 F.2d 126 (3d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986), in which the Third Circuit addressed these issues and rejected the taxpayer's claim. Recently, the Second Circuit arrived at the same ultimate determination in *Canisius College v. United States*, 799 F.2d 18 (2d Cir.1986). The Third Circuit concluded that the Treasury had correctly interpreted the statutes as they applied before the 1983 and 1984 amendments. On this point, the Second Circuit disagreed. *See id.* at 22 n. 7; *Temple Univ. v. United States*, 769 F.2d at 129–30. As we explain *infra*, we find the Second Circuit's reasoning more persuasive. Both courts, however, fundamentally agreed on the other arguments raised by the taxpayers, and each arrived at the same ultimate determination. We adopt the reasoning set forth in *Canisius College* and, therefore, reject the Hospital's arguments.

## II. THE REVENUE RULING

During the period for which the Hospital seeks a refund—from 1980 to 1982—the statutes contained nearly identical definitions of "wages" subject to FICA taxes

1. Employers are required to deduct a designated percentage of their employees' taxable wages and pay over the amounts withheld. I.R.C. §§ 3101–3102 (1986). Additionally, employers themselves must pay a corresponding excise tax.

I.R.C. § 3111. The Hospital seeks a refund of both the FICA taxes withheld and those paid by it based on the amounts contributed to the annuity plans.

and income tax withholding. For income tax withholding, "wages" were defined as "all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration paid in any medium other than cash." I.R.C. § 3401 (1982). "Wages" were defined for FICA taxes as "all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash." I.R.C. § 3121(a).

The FICA and income tax provisions also contained similarly worded exclusions from taxable wages for contributions to annuity plans. For an annuity contract purchased by a section 501(c)(3) employer for its employees, the statute provided that "amounts contributed by such employer for such annuity contract ... shall be excluded from the gross income of the employee" until the fund is distributed as long as the contributions did not exceed the designated allowance. I.R.C. § 403(b). Similarly, "the amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee ... on account of ... retirement" shall be excluded from FICA taxes. I.R.C. § 3121(a)(2). Despite the similarity of the wording of these provisions, in Revenue Ruling 65–208 the Treasury took the position that, although employers did not have to withhold income taxes from contributions to salary reduction annuity plans under section 403(b), they did have to withhold and pay FICA taxes on those amounts under section 3121(a)(2). Rev.Rul. 65–208, 1965–2 C.B. 383.

■ We agree with the Second Circuit's conclusion that this position was "in conflict not only with the plain language of the exclusion from FICA wages for the amount 'paid by an employer' but also with the interpretation accorded to the similar statutory language in section 403(b)." *Canisius College v. United States*, 799 F.2d at 23. When interpreting legislation, "a statute's plain language is the primary indicator of

its meaning." *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.*, 545 F.2d 754, 756 (1st Cir. 1976), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). Section 3121(a) did not distinguish between salary reductions and salary supplements. The exclusion applied to "any amount paid by an employer" under an annuity retirement plan. I.R.C. § 3121(a)(2). Moreover, the House Report said that payments were to be excluded "even though the amount or possibility of such payments is taken into consideration in fixing the amount of remuneration." H.R.Rep. No. 728, 76th Cong., 1st Sess., *reprinted in* 1939–2 C.B. 538, 548. It seems clear that Congress intended to exclude salary reduction plans as well as salary supplement plans. *See Canisius College v. United States*, 799 F.2d at 22–23.

The Treasury's interpretation of similar statutes in different ways so as to exclude contributions to salary reduction plans from income tax withholding but not from FICA taxes is also contrary to *Rowan Cos., Inc. v. United States*, 452 U.S. 247, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981). In *Rowan*, the Supreme Court invalidated Treasury regulations that required the value of meals and lodging provided by employers to their employees to be included for FICA and Federal Unemployment Tax Act (FUTA) purposes, but not for income tax withholding purposes. *Id.* at 249–50, 101 S.Ct. at 2290–91. The Court found no indication in the legislative history that Congress intended substantially identical definitions of taxable "wages" to have different meanings. *Id.* at 255–62, 101 S.Ct. at 2293–97. It held "that Congress intended its definition to be interpreted in the same manner for FICA and FUTA as for income-tax withholding." *Id.* at 263, 101 S.Ct. at 2297.

The Treasury's position in Revenue Ruling 65–208, therefore, was only justified if there was a sound basis for concluding that Congress meant something different by very similar provisions. The only basis for the distinction set forth in Revenue Ruling

65–208 was the conclusion that the gross income and FICA exclusions had "substantially different" purposes. But there is no indication that Congress had such different purposes in mind for the exclusions when it enacted the statutes. The Third Circuit concluded that in the absence of an explicit exclusion, the Treasury's position was justified because of "the long-standing congressional intent to restrict the forms of compensation excluded from the FICA wage base." *Temple Univ. v. United States,* 769 F.2d at 130. The court was persuaded by a Senate Report accompanying the 1983 amendments that said:

> The social security program aims to replace the income of beneficiaries when that income is reduced on account of retirement and disability. Thus, the amount of "wages" is the measure used both to define income which should be replaced and to compute FICA tax liability. Since the security system has objectives which are significantly different from the objective underlying the income tax withholding rules, the committee believes that amounts exempt from income tax withholding should not be exempt from FICA unless Congress provides an explicit FICA tax exclusion.

S.Rep. No. 23, 98th Cong., 1st Sess. 42, *reprinted in* 1983 U.S. Code Cong. & Ad. News 143, 183, *quoted in Temple Univ. v. United States,* 769 F.2d at 130. These concerns certainly justified Congress' modifying the statutes to adopt the Treasury's position. But in discerning Congress' intent in enacting the statutes, the opinion of the 1983 Congress on this matter is not entitled to as much weight as the contemporary legislative history. *See Cannon v. University of Chicago,* 441 U.S. 677, 687 n. 7, 93 S.Ct. 1764, 1768 n. 7, 36 L.Ed.2d 583 (1979). The Supreme Court has said that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960); *see also Estate of Ceppi v. Commissioner,* 698 F.2d 17, 20 (1st Cir.) (statements of subsequent Congress are dubious support for statutory interpre-

tation), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3088, 77 L.Ed.2d 1350 (1983). In 1983, Congress was looking to solidify the social security system in the face of serious concerns about its solvency, concerns that would motivate it to preclude possible claims for refunds. *See* H.R.Rep. No. 25, 98th Cong., 1st Sess., *reprinted in* 1983 U.S.Code Cong. & Ad.News 219. When the statutes were enacted in 1936, however, Congress wanted to encourage employers to provide retirement benefit plans even if it meant a reduction in contributions to the FICA system. *See Canisius College v. United States,* 799 F.2d at 23. The House Report said that "[t]he reason for the exclusion was to save employers time and money but what is more important is that it will eliminate any reluctance on the part of the employer to establish such plans due to the additional tax cost." H.R.Rep. No. 728, 76th Cong., 1st Sess., *reprinted in* 1939–2 C.B. 538, 543. Although subjecting salary reduction plans to FICA taxes would be consistent with Congress' goals in 1983 and 1984, it would be contrary to Congress' goals when it created the exclusions. Because there is no indication that when the statutes were enacted Congress intended that the nearly identical provisions be interpreted differently, we conclude that Revenue Ruling 65–208 was an incorrect interpretation of the law and had no statutory basis.

## III. THE STATUTORY AMENDMENTS

■ In 1983, Congress amended the statutes to codify Revenue Ruling 65–208. *See* S.Rep. No. 23, 98th Cong., 1st Sess. 41, *reprinted in* 1983 U.S.Code Cong. & Ad. News 143, 182. Section 3121(a)(2) was amended by deleting the exclusion from FICA wages for retirement plans. Social Security Amendments of 1983, Pub.L. No. 98–21, § 324(a)(3)(A), 97 Stat. 65, 123. A new section was added so that employer payments "under or to an annuity contract described in section 403(b), other than a payment for the purchase of such contract which is made by reason of a salary reduction agreement" are excluded from FICA

wages, making it clear that salary reduction plans are subject to FICA taxes. Social Security Amendments of 1983 § 324(a)(2)(C), 97 Stat. at 122 (codified at I.R.C. § 3121(a)(5)(D) (1986)). Additionally, Congress enacted a general "decoupling" section that provides: "Nothing in the regulations prescribed for purposes of chapter 24 (relating to income tax withholding) which provides an exclusion from 'wages' as used in such chapter shall be construed to require a similar exclusion from 'wages' in the regulations prescribed for purposes of this chapter [ (relating to FICA taxes) ]." Social Security Amendments of 1983 § 327(d)(1), 97 Stat. at 127 (codified at I.R.C. § 3121(a) (1986)).

These amendments initially were applicable only to remuneration paid after December 31, 1983. As part of the Deficit Reduction Act of 1984, however, Congress gave retroactive effect to the decoupling provision "to remuneration ... paid after March 4, 1983, and to any such remuneration paid on or before such date which the employer treated as wages when paid." Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2662(g), 98 Stat. 494, 1160. Because this amendment retroactively applied the 1983 provisions to remuneration "the employer treated as wages when paid," it could be read as applying only to taxes levied in accordance with the regulations invalidated in *Rowan*. But as the Second and Third Circuits have held, Congress had the broader purpose of precluding claims for FICA tax refunds based on *Rowan*. *See Canisius College v. United States*, 799 F.2d at 23–25; *Temple Univ. v. United States*, 769 F.2d at 132–33. Congress wanted to prevent the 1983 amendments from being "cited as demonstrating Congressional intent that the reasoning of the *Rowan* decision should generally apply before these dates to types of remuneration other than meals and lodging excluded under section 119, e.g., to contributions under a salary reduction agreement to tax-sheltered annuities (sec. 403(b))." H.R.Rep. No. 432, 98th Cong., 1st Sess. 1658, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1280. Congress was concerned that "[i]f the 1965

revenue ruling were determined to be invalid, then employers and employees would be eligible for refunds for open years because taxable wages would be lower." *Id.* The 1983 and 1984 amendments, therefore, were intended to foreclose the kind of claim being made by the Hospital. Unless the amendments are invalid, the Hospital is not entitled to a refund.

## IV. RETROACTIVITY

The Hospital argues that Congress acted unconstitutionally when it retroactively validated the Treasury's policy of requiring the payment of FICA taxes on the salary reduction annuity plans. Justice White has warned about the difficulty the courts face "in discerning the difference between permissible curative legislation and unconstitutionally retroactive legislation." *Van Emmerik v. Janklow*, 454 U.S. 1131, 1132, 102 S.Ct. 986, 987, 71 L.Ed.2d 285 (1982) (White, J., dissenting from dismissal of appeal). As he said, "the lower courts are in conflict, and the Court's prior cases fail to furnish adequate guidance." *Id.* at 1134, 102 S.Ct. at 988.

Given this difficulty, we must exercise extreme caution before overriding Congress' judgment, especially in the field of taxation, in which the courts have been very reluctant to invalidate retroactive tax legislation. *See* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 706 (1960). For us to invalidate retroactive taxation, "the result must be so harsh and oppressive as to amount to a denial of due process." *Picchione v. Commissioner*, 440 F.2d 170, 173 (1st Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 66, 30 L.Ed.2d 57 (1971); *see Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938). This test "does not differ from the prohibition against arbitrary and irrational legislation." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the [courts] with a

presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

 We agree with the Second and Third Circuits that the effect of the 1983 amendments is neither "harsh and oppressive" nor "arbitrary and irrational." *Canisius College v. United States,* 799 F.2d at 25–27; *Temple Univ. v. United States,* 769 F.2d at 134–35. The Supreme Court has directed that "[i]n each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation." *Welch v. Henry,* 305 U.S. at 147, 59 S.Ct. at 125. Congress' 1984 enactment ratified long-standing Treasury policy. The amendments, therefore, brought the tax code in line with the Hospital's expectations at the time it withheld and paid the taxes. Legislation that merely validates a prior tax collection is less likely to violate the principles of due process than legislation that retroactively imposes a tax that had not been anticipated. The Hospital complied with the Treasury's ruling and apparently did not have reason to believe that it might be incorrect until the Supreme Court decided *Rowan* in 1982.

We agree, therefore, with the Second Circuit that "[c]onsidering the absence of either vested interests or taxpayer reliance, Congress' decision to address its concern by making retroactively lawful the taxes already collected is neither irrational, nor a harsh and oppressive way of 'apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.'" *Canisius College v. United States,* 799 F.2d at 27 (quoting *Welch v. Henry,* 305 U.S. at 146, 59 S.Ct. at 125.). Congress did not act unconstitutionally when it validated the Treasury's interpretation of the statutes.

## V. CONCLUSION

We hold as follows: (1) The Treasury's position set forth in Revenue Ruling 65–208 was an incorrect interpretation of the statutes as they applied during 1980–1982 and contrary to *Rowan;* (2) Congress, however, adopted the Treasury's position in 1983, and in 1984 applied it retroactively; and (3) this legislation was not unconstitutional.

*Affirmed.*