**EXPRESS OIL CHANGE, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CV–95–B–1612–S.

United States District Court,
N.D. Alabama,
Southern Division.

Sept. 30, 1996.

C. Fred Daniels, Jimmy G. McLaughlin, Dominick Fletcher Yeilding Wood & Lloyd, Birmingham, AL, for Plaintiff.

Caryl Privett, Sharon D. Simmons, U.S. Attorney's Office, Birmingham, AL, D. Wayne Rogers Jr., Gleissner Stallings & Rogers, Birmingham, AL, Cynthia Lewis Stier, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION

BLACKBURN, District Judge.

Currently before the court are cross motions for summary judgment as to all claims asserted by plaintiff. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that plaintiff's motion for summary judgment is due to be granted and that defendant's motion for summary judgment is due to be denied.[1]

This suit arises out of a dispute over the entitlement of plaintiff, Express Oil Change, Inc., to a refund of FICA, FUTA, and income-tax withholding taxes. Plaintiff moves for summary judgment as to its claim that FICA, FUTA and income-tax withholding taxes were erroneously assessed against it and should be refunded. Defendant, United States of America, moves for summary judgment on its claim that the taxes were properly assessed and that plaintiff is not entitled to a refund.

## FACTUAL SUMMARY

The facts of the dispute are largely undisputed. Plaintiff entered into a Group Health Care Agreement with Southeast Health Plan to provide health insurance coverage to its employees. (Lunceford[2] Aff.; see Group Health Care Agreement attached to Pl. Motion for Summ.J. ("Agreement")). All costs of the group health insurance were paid by plaintiff, not the employees, (Lunceford Aff), and the contract between Southeast Health Plan and plaintiff provided that plaintiff was liable to Southeast Health Plan "for all payments of the Total Monthly Premium," (Agreement at 4).

From 1989 to 1991, new employees were asked whether they wanted health insurance coverage. (Lunceford Aff.) Employees who elected health insurance received a reduced salary. (Id.; Letter from Kenneth Peters, Certified Public Accountant With Power of Attorney, to Ms. Brenda Adams, Internal Revenue Service, at Def.Ex. 1 attached to Def. Motion for Summ.J. ("Def.Ex.1")). The amount an employee's salary was reduced varied for family coverage and single coverage. (Def.Ex.1). However, the difference in salary did not necessarily correspond to the cost of the health insurance premiums paid by plaintiff. (Lunceford Aff.). Plaintiff provided the following example to the Internal Revenue Service: An employee is hired and remuneration is set at $300 per week. If the employee chooses family health insurance coverage, the employee's remuneration is decreased by $50 per week. The employee is paid $250 per week, and the employer pays the entire group insurance premium. If the employee chooses not to be covered, the employee is paid $300 per week. (Def.Ex.1).

Each employee's terms of employment were subject to negotiation throughout the hiring process, and it was not uncommon for employees to make counter-offers during the bargaining process. (Id.) If an employee later changed his election and terminated his insurance coverage, he would automatically receive higher wages in the amount that his salary had been reduced. (Reid[3] Dep. at

---

1. At oral argument, the court expressed to counsel that it was of the opinion that the government's Motion for Summary Judgment was due to be granted. Upon further consideration of the law, the court has concluded that the plaintiff's legal position is correct. Therefore, the government's Motion for Summary Judgment will be denied and plaintiff's motion will be granted.

2. James O. Lunceford is plaintiff's President. (Lunceford Aff.)

3. Greg J. Reid is the Controller for plaintiff. (Reid Aff.).

22). Approximately 70% of plaintiff's employees received health insurance under plaintiff's group health insurance plan. (Reid Aff.).

Plaintiff did not withhold any amount for federal income-tax withholding. FICA taxes, or FUTA taxes from its employees' wages for the payment of health insurance premiums. (Reid Aff.). The Internal Revenue Service, however, assessed plaintiff for federal income-tax withholding, FICA taxes, and FUTA taxes on the amount of salary that the employees could have received had they not chosen to receive health insurance. Plaintiff paid $98,351.98 for the tax years 1989 through 1991 and brought this action seeking a refund of those taxes.

## SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; see Fed.R.Civ.P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted); accord *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir.1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

## DISCUSSION

In determining employer obligations for FICA[4] and income-tax withholding purposes, the determinant is "wages." 26 U.S.C. §§ 3101(a), 3111, 3301, 3402(a); *Canisius College v. United States*, 799 F.2d 18, 20 (2nd Cir.1986), cert. denied, 481 U.S. 1014, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987). Therefore, the issue in this case is whether the cash salary that plaintiffs' employees could have received had they chosen not to receive health insurance constitutes "wages" for purposes of FICA taxes and income-tax withholding. As the Second Circuit has recognized, "[t]he statutory definitions of "wages" for FICA and for income-tax withholding purposes are substantially identical in that each provides generally that wages constitute 'all remuneration.'" *Canisius College*, 799 F.2d at 20. However, each definition contains various exclusions. In determining whether plaintiff is entitled to a refund, the court will first discuss whether the cash sala-

4. Neither party distinguishes between FICA and FUTA taxes for purposes of the analysis in this case, and the general definition of "wages" is the same for determining both FICA and FUTA tax-

es. See 26 U.S.C. §§ 3121(a), 3306(b). Therefore, the court will refer to both FICA taxes and FUTA taxes collectively as "FICA taxes."

ry constitutes "wages" under FICA and then whether the cash salary constitutes "wages" for purposes of income-tax withholding.

## I. FICA

Section 3121(a)(2) of title 26 of the United States Code provides that the term "wages" shall not include "the amount of any payment (including any amount paid by an employer for insurance or annuities, or into a fund, to provide for any such payment) made to, or on behalf of, an employee or any of his dependents under a plan or system established by an employer which makes provision for his employees generally ... or for a class or classes of his employees" on account of sickness, accident disability, or death. 26 U.S.C. § 3121(a)(2). Plaintiff argues that this provision excludes the cash salary that its employees could have received had they chosen not to obtain health insurance. Defendant, however, argues that a distinction should be drawn between so-called salary reduction plans and salary supplement plans. According to defendant, plaintiff's policy of reducing its employee's salary in exchange for health insurance coverage requires that the salary which the employee could have received be treated as "wages" under FICA. On the other hand, had plaintiff merely offered to supplement its employees' salaries with health insurance coverage, that coverage would not constitute "wages" under FICA. In assessing each party's argument, the history behind § 3121 and Its interpretation plays a crucial role.

Prior to 1983, § 3121(a)(2) excluded from "wages" not only payments made to employees or dependents for sickness, accident disability, or death, but also payments made to employees or dependents for "retirement." In 1965, the Internal Revenue Service ("IRS") issued Revenue Ruling 65–208, which concerned a § 403(b) annuity plan under which an employee entered into an agreement with the employer to take a reduction in salary in exchange for the purchase of a nontransferable annuity contract on his behalf. Rev.Rul. 65–208, 1965–2 C.B. 383. In determining whether the amounts used by the employer pursuant to the salary reduction agreement to purchase the annuity were "wages" under FICA, the IRS distinguished between a salary reduction plan and a salary supplement plan. The IRS held that the amounts paid by an employer for annuity contracts under a salary reduction plan were "wages" under FICA, while amounts paid by an employer from its own funds for the purchase of an annuity contract on behalf of its employee were not "wages" under FICA. Id. The ruling also distinguished between the definition of "wages" for purposes of FICA taxes and the definition of "wages" for purposes of income-tax withholding. The ruling stated that although the amounts paid by the employer pursuant to a salary reduction plan were considered "contributed by the employer" and, therefore, exempt from income tax under 26 U.S.C. § 403(b), they were not considered "paid by an employer" and, therefore, were not exempt from FICA tax. Id. As a result, the IRS concluded that the withholding of income tax is not required on the amounts paid by an employer for annuity contracts pursuant to a salary reduction plan, but those amounts are subject to FICA taxes. Id.; see also Canisius College, 799 F.2d at 21 (discussing Rev.Rul. 65–208).

In 1981, the Supreme Court considered the language and the legislative history of the relevant Acts and concluded that Congress intended the definition of "wages" to be interpreted in the same manner for FICA and FUTA taxes as for income-tax withholding. *Rowan Companies, Inc. v. United States,* 452 U.S. 247, 263, 101 S.Ct. 2288, 68 L.Ed.2d 814 (1981). This decision seemed to invalidate Revenue Ruling 65–208, and in 1983, Congress acted to preclude the possible impact of Rowan on Revenue Ruling 65–208 when it enacted the Social Security Amendments of 1983. See Social Security Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 65; see also S.Rep. No. 98–23, 99th Cong., 1st Sess. 41, reprinted in 1983 U.S.C.A.A.N. 143, 182 (amendments intended to codify Rev.Rul. 65–208). In part, these amendments deleted the statutory exclusion from FICA wages for amounts paid by employers for retirement plans in § 3121(a)(2) and added a new subsection, now codified at § 3121(a)(5)(D), excluding from FICA wages any employer payment "under or to an annuity contract described in section 403(b), other than a payment for the purchase of such contract which is made by reason of a salary

reduction agreement." Pub.L. No. 98–21, §§ 324(a)(2), (3), 97 Stat. 65, 122–23 (emphasis added).

Also in 1983, Congress enacted provisions that "decoupled" the interpretations of FICA and FUTA wages from the interpretation of "wages" for income-tax withholding. The FICA "decoupling" clause provides that "[n]othing in the regulations prescribed for purposes of chapter 24 (relating to income-tax withholding) which provides an exclusion from 'wages' as used in such chapter shall be construed to require a similar exclusion from 'wages' in the regulations prescribed for purposes of this chapter." 26 U.S.C. § 3121(a). According to the legislative history, Congress enacted this provision because of the congressional view that the objectives of the social security system differ from those of the income-tax withholding system. S.Rep. No. 98–23, 98th Cong., 1st Sess. 41, reprinted in 1983 U.S.C.A.A.N. 143, 183.

As a result of the 1983 Social Security Amendments, it is now clear that payments made for the purpose of retirement pursuant to a salary reduction plan are considered "wages" for purposes of FICA taxes. The question in this case, however, is the effect of Revenue Ruling 65–208 and the 1983 amendments on payments made for the purpose of health insurance pursuant to a salary reduction plan. In resolving this issue, the validity of Revenue Ruling 65–208 is crucial because, as mentioned above, at the time the ruling was issued, § 3121(a)(2) provided for exclusions from "wages" for payments made on account of retirement, as well as sickness, disability, and death. With the 1983 amendments, Congress deleted the retirement category from § 3121(a)(2) and added a new subsection dealing specifically with annuity payments and not excluding from the definition of "wages" retirement payments made pursuant to a salary reduction agreement. If the court determines that Revenue Ruling 65–208 is valid and applies to the other subsections of § 3121(a)(2), the payments made by plaintiff on behalf of its employees cannot be excluded from the definition of "wages" for FICA taxes. If, on the other hand, the court determines that Revenue Ruling 65–208 is not valid, the court must then decide whether there is some other basis for holding that payments made pursuant to a salary

reduction plan should be distinguished from payments made pursuant to a salary supplement plan, as defendant suggests.

Three Circuit Courts of Appeals have considered the validity of Revenue Ruling 65–208 since the Rowan decision and the 1983 Social Security Amendments. See *New England Baptist Hosp. v. United States*, 807 F.2d 280, 281–83 (1st Cir.1986); *Canisius College*, 799 F.2d at 22–23; *Temple University of Com. System of Higher Educ. v. United States*, 769 F.2d 126, 129–30 (3rd Cir.1985), cert. denied, 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986). In each case, the issue was whether payments made to a § 403(b) retirement plan pursuant to a salary reduction plan should be included in the employees' "wages" under FICA. Although each court ultimately concluded that the payments should be considered "wages" under FICA, the courts disagreed as to the validity of Revenue Ruling 65–208. Both the First Circuit and the Second Circuit considered the plain language of § 3121(a)(2), the legislative history of that section, and the Supreme Court's decision in Rowan and held that Revenue Ruling 65–208 was not valid because it incorrectly concluded that a distinction should be drawn between salary reduction plans and salary supplement plans under § 3121(a)(2). *New England Baptist Hosp.*, 807 F.2d at 282–83; *Canisius College*, 799 F.2d at 22–23. In concluding that the payments at issue in each case should be considered "wages" under FICA, the courts relied on the effect of the 1983 amendments and a 1984 provision in the Deficit Reduction Act that altered the date on which the FICA "decoupling" provision was to become effective. *New England Baptist Hosp.*, 807 F.2d at 283–84; *Canisius College*, 799 F.2d at 23–25; see also Pub.L. No. 98–369, § 2662(g), 98 Stat. 494, 1160.

However, in Temple University, the Third Circuit considered the validity of Revenue Ruling 65–208 and held that the distinction drawn between salary reduction plans and salary supplement plans was valid even before the 1983 amendments. *Temple University*, 769 F.2d at 130. In reaching this conclusion, the Third Circuit relied principally on the legislative history of the 1983 amend-

ments, in which Congress expressed its intention to codify Revenue Ruling 65–208. *Id.* at 129–30. According to the Temple University court, the legislative history evidences Congress' belief that "Rev.Rul. 65–208[w]as the properly applicable law." *Id.* at 129. The court also considered the purposes behind FICA taxes and the income tax system and concluded that their differing purposes supported the conclusion, as stated in the ruling, that payments made to annuities pursuant to salary reduction plans could properly be considered "wages" for purposes of FICA taxes, while being excluded as "wages" for purposes of income-tax withholding. *Id.* at 130.

■ Having considered these cases carefully, the court agrees with the First and Second Circuits that Revenue Ruling 65–208 is an invalid interpretation of the statutory language and the legislative history of § 3121(a)(2). As noted by both courts, there is nothing in the statutory language that would suggest that a distinction should be drawn between salary reduction plans and salary supplement plans. Section 3121(a)(2) provided that amounts "paid by an employer for ... annuities ... under a plan ... on account of ... retirement" were excluded from FICA wages. 26 U.S.C. § 3121(a)(2) (prior to 1983 amendments). On its face, this language does not distinguish between amounts "paid by an employer" pursuant to a salary supplement plan or those amounts "paid by an employer" pursuant to a salary reduction plan. In addition, the legislative history of the provision belies the IRS's conclusion in Revenue Ruling 65–208 that a distinction should be drawn: "These payments will be excluded even though the amount or possibility of such payments is taken into consideration infixing the amount of remuneration and even though such payments are required, either expressly or impliedly, by the contract of employment." H.R.Rep. No. 728, 76th Cong., 1st Sess., reprinted in 1939–2 C.B. 538, 548 (emphasis added); see also *Canisius College*, 799 F.2d at 22–23 (discussing legislative history of § 3121). Finally, the court notes the Supreme Court's direction in Rowan, prior to the 1983 amendments, that the definition of "wages" for purposes of FICA taxes and income-tax with-

holding should be interpreted consistently. See *Rowan*, 452 U.S. at 263, 101 S.Ct. 2288.

The court also agrees with the First Circuit's critique of the Temple University court's reliance on the legislative history of the 1983 amendments as evidence of Congress' intent with regard to § 3121(a)(2) prior to those amendments. As the First Circuit emphasized, the interpretation of § 3121(a)(2) at the time of Revenue Ruling 65–208 turns, not on the 1983 Congress' intent, but rather on the intent of the Congress which enacted § 3121(a)(2). *New England Baptist Hosp.*, 807 F.2d at 283; see also *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 520, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (views of subsequent Congress form hazardous basis for inferring intent of earlier one). After considering the legislative history from both the enactment of § 3121(a)(2) and the 1983 amendments, the First ·Circuit found that in 1983 Congress was concerned about solidifying the social security system "in the face of serious concerns about its solvency," while when the statutes were enacted in 1936, the purpose of the exclusion was to " 'eliminate any reluctance on the part of the employer to establish [retirement benefit] plans due to the additional tax cost.' " Id. (quoting H.R.Rep. No. 728, 76th Cong., 1st Sess., reprinted in 1939–2 C.B. 538, 543). The court concluded that "[a]lthough subjecting salary reduction plans to FICA taxes would be consistent with Congress' goals in 1983 and 1984, it would be contrary to Congress' goals when it created the exclusions." Id. Given the plain language of the § 3121(a)(2) at the time of Revenue Ruling 65–208 and its legislative history, the court agrees with the conclusion of the *Canisius College* and *New England Baptist Hosp.* courts that there was no statutory basis for the distinction drawn in Revenue Ruling 65–208 between salary supplement plans and salary reduction plans.

■ Having reached this conclusion, the next question is whether a distinction between amounts paid pursuant to a salary reduction plan and amounts paid pursuant to a salary supplement plan should be drawn under § 3121(a)(2) today as that provision applies to health insurance plans. As dis-

cussed above, Congress amended § 3121 in 1983 by deleting the exclusion for amounts paid to retirement plans under § 3121(a)(2) and by adding a new subsection, now codified at § 3121(a)(5)(D). The new subsection provides explicitly that payments made for the purchase of a § 403(b) annuity contract pursuant to a salary reduction agreement are not excluded from FICA taxes. 26 U.S.C. § 3121(a)(5)(D). Congress did not, however, add such language to § 3121(a)(2), nor did it create a separate subsection for payments made for the purpose of health insurance, explicitly providing that payments made pursuant to a salary reduction plan would not be excluded from FICA. As stated above, nothing in the language of § 3121(a)(2) evidences Congress' intent to distinguish between these types of payments, nor does the legislative history of that provision support the conclusion that Congress intended to exclude payments made pursuant to a salary supplement plan, but not payments made pursuant to a salary reduction plan. Because there is no statutory basis for distinguishing between these types of payments under § 3121(a)(2), the court concludes that amounts "paid by an employer" to a fund for the purchase of health insurance for its employees and paid pursuant to a salary reduction agreement should be excluded from FICA taxes. Therefore, plaintiff's motion for summary judgment as to its entitlement to a refund of FICA taxes paid between 1989 and 1991 as a result of such payments is due to be granted.

## II.  Income–Tax Withholding

The next issue is whether the amount by which plaintiff's employees' salaries were reduced as a result of the salary reduction plan should be subject to income-tax withholding. As noted above, the Supreme Court in *Rowan* held that "wages" should be interpreted similarly for purposes of FICA taxes and income-tax withholding. *Rowan*, 452 U.S. at 263, 101 S.Ct. 2288. Having concluded that the salary reduction amount should be excluded from FICA taxes, it would seem a simple decision to conclude that it is excluded from income-tax withholding as well. However, as also noted above, Congress amended the definition of "wages" under FICA in 1983 to state that nothing in the regulations requiring exclusions from "wages" for income-tax withholding should be interpreted as requiring a similar exclusion from "wages" under FICA.

Plaintiff notes correctly that this decoupling provision appears to run only one way. That is, the provision removes the requirement that the IRS treat all exclusions from "wages" for purposes of income-tax withholding as exclusions from "wages" for FICA taxes. However, Congress did not add a similar provision to the definition of "wages" for purposes of income-tax withholding, and nothing in the FICA provision expressly permits the IRS to find that a payment may be excluded from "wages" for FICA taxes but not from "wages" for income-tax withholding purposes. Plaintiff argues, therefore, that while the 1983 amendments changed *Rowan's* requirement that all exclusions from "wages" for income-tax withholding also be considered exclusions from "wages" for FICA taxes, it did not change the converse requirement implicit in the *Rowan* holding that all exclusions from "wages" for FICA taxes also be considered exclusions from "wages" for income-tax withholding.

■ Even if the decoupling provision runs both ways, however, and permits the IRS to treat a payment as excluded from "wages" for FICA taxes and not as excluded from "wages" for income-tax withholding, the court still concludes that the salary reduction amounts in this case should be excluded from the employees' "wages" for income-tax withholding purposes. Defendant argues persuasively that because plaintiff's employees had the choice of accepting a salary reduction in exchange for health insurance coverage or a higher salary, they effectively assigned the amount of the salary reduction to plaintiff, controlling that income. Therefore, pursuant to the assignment of income doctrine, defendant asserts that the salary reduction amount constitutes gross income to the employees who entered into a salary reduction agreement. See *Caruth Corp. v. United States*, 865 F.2d 644, 648 (5th Cir.1989) ("assignment of income doctrine holds that one who earns income cannot escape tax upon the income by assigning it to another"). The question in this case, however, is not whether the salary reduction amounts constitute gross income to the employees, but rather, whether they constitute "wages" for pur-

poses of income-tax withholding. As plaintiff correctly notes, an employee's gross income is not the same as his "wages" for purposes of income-tax withholding, and "many items [that] qualify as income ... are not wages." *Central Illinois Public Service Co. v. United States,* 435 U.S. 21, 25, 98 S.Ct. 917, 55 L.Ed.2d 82 (1978).

As support for its contention that the salary reduction amounts should not be considered "wages" for income-tax withholding purposes, plaintiff cites Revenue Procedure 80–53, 1980–2 C.B. 848. This Revenue Procedure was issued in response to the Supreme Court's conclusion in Central Illinois that an employee's "wages" for purposes of income-tax withholding is narrower than that employee's gross income. Rev.Proc. 80–53, 1980–2 C.B. 848. Revenue Procedure 80–53 provides that fringe benefits that are treated as includable in an employee's gross income will not be treated as "wages" for purposes of income-tax withholding if: (1) the payments are not the type of benefit treated as wages under a statute, a regulation, a revenue ruling, a revenue procedure, or a court decision; and (2) there is a reasonable basis for the belief that such benefits should not be considered as remuneration for services. Id.

In this case, defendant has cited to the court no statute, regulation, revenue ruling, revenue procedure, or court decision in which payments made for the purpose of health insurance pursuant to a salary reduction agreement are treated as "wages" for income-tax withholding purposes. To the contrary, the Revenue Ruling on which defendant principally relies, Revenue Ruling 65–208, treated payments made under a § 403(b) annuity plan pursuant to a salary reduction agreement as excluded from "wages" for income-tax withholding, even though it treated such payments as "wages" for FICA taxes. In addition, the regulations implementing the statutory provisions excluding amounts "paid by an employer" for sickness, disability, or death from FICA and FUTA taxes echo the statement made in the legislative history of § 3121(a)(2) and provide that "[i]t is immaterial for purposes of this exclusion whether the amount or possibility of such benefit payments is taken into consideration in fixing the amount of an employee's remuneration or whether such payments are required, ex-

pressly or impliedly, by the contract of service" 26 C.F.R. §§ 31.3121(a)(2)–1(d), 31.3306(b)(2)–1(d). Therefore, even if the decoupling provision permits the IRS to treat a payment excluded from "wages" for FICA taxes as not excluded from "wages" for income-tax withholding, these regulations provide a "reasonable basis" for plaintiff's conclusion that the salary reduction amounts would not be considered "wages" for purposes of income-tax withholding. Because defendant has cited no authority for treating the payments at issue in this case as "wages" for purposes of income-tax withholding and because plaintiff had a "reasonable basis" for concluding that they were not "wages," they should not have been treated as "wages" by the IRS. As a result, plaintiff's motion for summary judgment as to this issue is due to be granted.

## CONCLUSION

Defendant's evidence raises no genuine issues of material fact regarding plaintiff's claims, and plaintiff is entitled to judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment is due to be granted, and defendant's motion for summary judgment is due to be denied.

An order granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment will be entered contemporaneously herewith.